NOT FOR PUBLICATION

**United States District Court**
**District of New Jersey**

_____

| | | |
|---|---|---|
| Ralph Zara, Jr., | : | |
| | : | |
| Petitioner, | : | Docket No. 04-2322 (SRC) |
| | : | |
| v. | : | OPINION |
| | : | |
| Alfaro Ortiz, Jr., | : | |
| | : | |
| Respondent | : | |
_____ :


**Chesler, District Judge**

Petitioner, Ralph Zara, Jr., currently confined in the Riverfront State Prison in Camden,

petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. §2254(a).  In support of

this application petitioner asserts the state violated his right to due process of law and right to be

free from double jeopardy when it rejected a plea agreement that had previously been approved,

and claims the trial court gave erroneous and prejudicial jury instructions that also violated his

right to due process.  For the reasons set forth below, petitioner's application for writ of habeas

corpus is denied.

**I. Background**

A.  Facts

Petitioner was employed at the Waterford Wedgewood warehouse in Wall Township.

Products are shipped to the warehouse from overseas and then delivered to stores for sale.  The

warehouse was experiencing a shortage in inventory and after an internal investigation, the police

were notified.  On March 30, 2000, Officer John Brockreide and Detective Texter of the Wall

Township Police Department spoke to petitioner at the warehouse.  The officers asked petitioner

if he knew why they were there and petitioner responded that he had been involved in shipping

items from the warehouse to his home.  Subsequent to that conversation, petitioner agreed to

accompany the officers to the police station.  When they arrived at the station, petitioner was

advised of his <u>Miranda</u> rights.  Petitioner then provided a voluntary statement admitting his

involvement.  Petitioner also told the officers he had been recruited by his brother-in-law, Pat

D'Anna, who had a supervisory position in the warehouse.  D'Anna, who had no prior criminal

record, was arrested and, after agreeing to make restitution of $52,070.50, was allowed to enter

pre-trial intervention.  After resolution of D'Anna's case, petitioner and the state negotiated the

plea agreement discussed below.


B.  Procedural History

On August 28, 2000, a Monmouth County Grand Jury indicted petitioner, charging him

with: (1) theft of moveable property greater than $75,000, a second degree crime and (2)

conspiracy, a second degree crime.  Petitioner's Brief ("PBr") at 4.  The matter was assigned to

the Honorable Michael D. Farren, J.S.C., before whom petitioner was arraigned on October 2,

2000.  Respondent's Brief ("RBr") at 2.  On November 13, 2000, a status conference was held

before Judge Farren, where petitioner rejected an offer by the state to recommend a flat five-year

sentence.  <u>Id.</u>  Judge Farren established a plea cutoff date of December 4, 2000, and scheduled

the trial for January 16, 2001.  <u>Id.</u>  In the interim, petitioner's counsel was transferred; First

Assistant Deputy Public Defender Jeffery Coghlan assumed representation of petitioner and trial

was rescheduled to February 26, 2001.  Id.

On that date, the matter was conferenced before the Honorable Theodore J. Labrecque, P.J.Cr., while Judge Farren was engaged in another trial.  Id. at 2-3.  Judge Labrecque was advised of the negotiated plea agreement, pursuant to which petitioner would plead guilty to theft, amended to a third degree crime, and the state would recommend a flat, four-year custodial sentence and "symbolic restitution" to Waterford Wedgewood.  2T at 3:15-22.  The agreement dismissed the conspiracy charge and under the terms the state would not seek an extended term of confinement or parole ineligibility.  Id.  After colloquy, during which Judge Labrecque verified petitioner's understanding of the plea agreement and elicited a factual basis, the judge accepted the guilty plea from petitioner.  1T at 4:14-8:6.  Judge Labreque then scheduled sentencing for April 6, 2001 before Judge Farren, who subsequently granted petitioner's request for an adjournment and rescheduled sentencing for May 25, 2001.

At the sentencing hearing, Judge Farren expressed dissatisfaction with respect to the symbolic restitution.  Judge Farren initially indicated confusion as to the meaning of "symbolic restitution."  The term was defined by petitioner's counsel as an amount left for the court to determine based upon petitioner's immediate ability to pay.  Judge Farren indicated a nominal amount was insufficient and petitioner should be responsible to pay greater restitution if ever petitioner's circumstances provided.  Thereafter, Judge Farren provided petitioner opportunity to enter into consent judgment on behalf of Waterford Wedgewood in the amount of $52,070.50, Without such agreement, Judge Farren would not agree to impose a sentence in accordance with the defense and prosecutor's agreement.  Petitioner refused to enter consent judgment and retracted his guilty plea.

On July 24-July 27, 2001, petitioner stood trial on charges of second degree theft and second degree conspiracy.  On July 27, 2001, the jury convicted petitioner of theft under $75,000, a third degree crime, and conspiracy to commit theft, a second degree crime.  On September 28, 2001, pursuant to the jury finding, Judge Farren imposed concurrent custodial terms of five years for the theft and ten years for the conspiracy.  The court further imposed a five-year period of parole ineligibility and ordered civil judgment in favor of Waterford Wedgewood in the amount of $52,070.50, to be paid at the rate of $100 per month commencing upon petitioner's release.  Finally, the court imposed a $100 Violent Crimes Compensation Board penalty, a $150 Safe Neighborhood Service Assessment Fund, and a $30 Law Enforcement Officers Training and Equipment Fund penalty.

Petitioner subsequently filed a motion for leave to file a notice of appeal *nunc pro tunc*. The New Jersey Appellate Division granted the motion, and on January 4, 2002, the petitioner filed a notice of appeal.  On April 23, 2003, the New Jersey Appellate Division affirmed the conviction and sentence.  On June 30, 2003, petitioner filed a petition for certification to the Supreme Court of New Jersey.  On September 8, 2003, petitioner's certification was denied.  On May 17, 2004, petitioner filed a writ of habeas corpus with this court.


**II. Discussion**

Petitioner argues his application for writ of habeas corpus should be granted because: (1) the state violated his right to due process of law and protection from double jeopardy when the sentencing judge refused to accept the plea agreement that had been previously approved, and (2) the trail court gave erroneous and prejudicial instructions to the jury that violated petitioner's

right to due process of law.  Respondents contend petitioner failed to exhaust available state remedies and petitioner's constitutional rights were not violated by the rejection of the plea agreement or the trial court's jury instructions.

## A.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner for writ of habeas corpus must demonstrate he has exhausted available state court remedies (28 U.S.C. § 2254(b)(1)) and the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).  "Federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982)(citations omitted).  Accordingly, habeas corpus proceedings are limited to review of the state court judgement in light of the constitution and should not be used to retry issues properly heard and disposed of in the state court.  See Chandler v. Florida, 449 U.S. 560, 570 (1981).

Petitioner sets forth two constitutional grounds to support his petition for writ of habeas corpus.  First, he contends his right to due process of law and to be free from double jeopardy, as guaranteed by the Fourteenth and Fifth Amendments to the United States Constitution, respectively, were violated by the sentencing court's rejection of the plea agreement.  Second, petitioner asserts the trial court's jury instructions were erroneous and prejudicial and thus further violated his right to due process of law.

B.  Exhaustion of State Remedies

As a prerequisite to a federal court's consideration of an application for a writ of habeas corpus, the petitioner must demonstrate that he has "exhausted the remedies available in the courts of the state, or . . . the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b).  The statute further provides: "[a]n applicant shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  Respondents assert petitioner failed to meet the exhaustion requirement because he did not seek post-conviction relief, available pursuant to New Jersey Court Rule 3:22-1.  After review of the procedural history of petitioner's case, this Court is satisfied petitioner has exhausted his available state remedies.

The Supreme Court has interpreted the exhaustion requirement to mean claims must have been merely presented to the state courts; they need not have been considered by those courts. Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Furthermore, a petitioner who has raised a claim in state trial court and on direct appeal satisfies the exhaustion requirement, and there is no requirement to apply for state post-conviction relief prior to application for habeas relief from federal court.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)(citing Evans v. Court of Common Pleas, Delaware County, Pennsylvania, 959 F.2d 1227, 1230 (3d Cir. 1992)).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement has been satisfied."  Picard, 404 U.S. at 275.

Following petitioner's conviction he appealed to the state appellate court and raised all

-6-

constitutional challenges presented here.  Upon the Appellate Court's decision to affirm, petitioner filed a petition for certification with the New Jersey Supreme Court.  Although certification was denied, the application itself was sufficient to satisfy the exhaustion requirement.  Therefore, respondent's claim that petitioner failed to exhaust state remedies by not filing for state post-conviction relief is without merit.

## C.  Rejection of Plea Agreement

*1. Due Process Claim*

Petitioner asserts the sentencing judge violated his federal right to due process of law by rejecting the plea agreement that had been initially accepted.  However, a defendant does not have an absolute right to have a plea accepted and it is within the sound discretion of the judge to reject a plea.  Santobello v. New York, 404 U.S. 257, 262 (1971).  Indeed, unless the judge explicitly binds the court to an agreement with a defendant, the court is not bound to accept the terms recommended by the prosecutor or the plea agreement at all.  New Jersey law specifically reserves this discretion to the judge at the time of sentencing.  N.J. Court Rule 3:9-3(e).  Specifically, the rule states:

> If at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel or by imposing sentence in accordance with the court's previous indications of sentence, the court may vacate the plea or the defendant shall be permitted to withdraw the plea.

Id.

New Jersey reserves this to the sentencing judge because at that point the judge, with access to the pre-sentencing report, will have a fuller picture of the defendant.  State v.

Brockington, 140 N.J.Super. 422, 433 (App. Div. 1976).  In short, New Jersey correctly

recognizes public policy requires that a court cannot enter into a binding commitment to impose

a specific sentence until after it has reviewed the pre-sentence report.  Prior to final approval by

the sentencing judge, the defendant has no vested interest in the plea.  Id.  Until that point, the

defendant suffers no prejudice and may withdraw the previously entered guilty plea and stand

trial.  Id..  In support of their opposing positions, both petitioner and respondent rely on State v.

Salentre, 242 N.J.Super. 108 (App. Div. 1990).  In Salentre, the court stated:

> Under our system, a trial judge does not concur contemporaneously
> in the plea agreement struck between the defendant and the State
> when the judge initially accepts the plea.  The judge's decision
> subsequently, at sentencing, as to whether "the interests of justice"
> will be served by carrying out the plea agreement, must be based
> on proper considerations.

 242 N.J.Super at 112.

Accordingly, at sentencing the judge may appropriately vacate a plea upon determination that the

agreement does not carry out the "interests of justice."  Id.  If the plea is vacated the defendant is

afforded the opportunity to withdraw the previously entered guilty plea.  Id.; Rule 3:9-3(c), (e).

Therefore, the issue is limited to whether the judge relied upon proper considerations in making

the decision.  Id.

Here the sentencing judge refused to accept the plea based upon his concern about

insufficient restitution and allowed petitioner to withdraw his guilty plea.  The judge initially

found the "symbolic restitution" provision of the agreement unclear.  After determination of the

meaning, the judge expressed concern about assessing symbolic restitution based upon

defendant's present financial status.  Specifically, the judge explained that the agreement

provided no basis for securing restitution from petitioner if his finances were to suddenly

improve.  The judge further noted there was a likelihood petitioner would serve substantially less time than called for under the agreement and he would not have to pay restitution while petitioner "had the benefit of selling all of this property."  The judge offered to accept the plea provided petitioner would consent to a civil judgment in the amount of $52,070.50, but petitioner refused.  Due to insufficient restitution in the terms of the agreement, the sentencing judge determined the plea was not in the interests of justice and therefore refused to accept it.  The judge then appropriately allowed petitioner to change his plea to not guilty and scheduled trial. The New Jersey procedure appears to comply, in all respects, with established federal law.  If the court concluded that it cannot impose the sentence agreed to by the prosecutor and defendant, then the remedy is to permit the defendant to withdraw his plea.  See United States v. Torres, 926 F.2d 321 (3d Cir. 1991) (and cases cited therein).

The record demonstrates the sentencing judge appropriately exercised his discretion consistent with New Jersey law.  Furthermore, petitioner was afforded opportunity to change his plea and stand trial.  Accordingly, this Court finds the judge's rejection of the plea agreement at sentencing did not violate petitioner's right to due process of law.


*2. Double Jeopardy Claim*

Petitioner further contends his right to be free from double jeopardy as guaranteed by the Fifth Amendment to the United States Constitution was violated by the rejection of the plea.  The double jeopardy guarantee protects defendants from successive prosecutions or multiple punishments for the same offense.  North Carolina v. Pearce, 395 U.S. 711, 717 (1969); State v. Nwobo, 139 N.J. 236, 257 (1995).  Specifically, the double jeopardy clause precludes: (1) a

second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  Illinois v. Vitale, 447 U.S. 410, 415 (1990).

In a case such as this, where petitioner was tried for a greater offense after the trial court initially accepted, but ultimately rejected petitioner's guilty plea to a lesser offense, jeopardy did not attach prior to trial.  See Gilmore v. Zimmerman, 793 F.2d 564, 570 (3d Cir. 1986)(citing U.S. v. Sanchez, 609 F.2d 761 (5th Cir. 1980)).  Prior to sentencing, upon presentation of appropriate reason, a defendant may have a guilty plea vacated and regain the right to trial. Santobello, 404 U.S. at 267-68.  Accordingly, a defendant may be tried on the same count to which the defendant plead guilty if he successfully withdrew from the bargain.  See U.S. v. Jerry, 487 F.2d 600, 606 (3d Cir. 1973).  Furthermore, where a judge accepts a defendant's guilty plea to a lesser offense, that defendant is not "implicitly acquitted" of the greater offense.  Klobuchir v. Commonwealth of Pennsylvania, 639 F.2d 966, 969 (3d Cir. 1981)(finding no jeopardy where defendant plead and was sentenced to lesser offenses and after dismissal by post-conviction relief was tried for greater offenses not identified in the plea).

Here, petitioner was not threatened with successive prosecutions for the same offense, therefore the Double Jeopardy Clause offers no protection.  Petitioner initially entered a plea of guilty to third degree theft.  After the sentencing judge refused to sentence in accordance with the prosecutor's recommendation due to insufficient restitution, petitioner was allowed to retract his guilty plea.  Petitioner was then tried for second degree theft and second degree conspiracy. Because the guilty plea was vacated prior to sentencing in accordance with New Jersey law and petitioner stood trial for greater offenses than those to which petitioner initially plead guilty,

-10-

petitioner did not risk double jeopardy.


D.  Jury Instructions

        Petitioner asserts his rights to due process of law were further violated by the trial court's

jury instructions.  On federal habeas review, the relevant question is "whether the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due process

 . . . not merely whether the instruction is undesirable, erroneous, or even universally

condemned."  Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (internal quotations and citations

omitted)(quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)).  In evaluating the impact, the

court must consider the challenged jury instructions in context of the overall charge.  Martin v.

Warden, Hundington State Correctional Inst., 563 F. 2d 799, 809-10 (quoting Cupp, 414 U.S. at

146-47).  "The burden of demonstrating an erroneous instruction was so prejudicial that it will

support a collateral attack on the constitutional validity of a state court's judgement is even

greater than the showing required to support plain error on direct appeal."  Henderson, 431 U.S.

at 145.  Furthermore, "an omission or an incomplete instruction in a jury charge, it is less likely

to be prejudicial than a misstatement of the law."  Id.

        In support of petitioner's application for habeas relief, he asserts: (1) the instruction on

the law of conspiracy was erroneous, misleading and prejudicial; (2) the judge failed to instruct

the jury on the law of prior inconsistent statements; and (3) the judge failed to properly instruct

the jury on the law of attempt.  The challenged conspiracy instruction was provided as a response

to a question posed by the jury.  The New Jersey Appellate Court found the trial court's response

was not in error.  State v. Zara, No. A-2229-01T4, slip op. at 6 (N.J. App. Div. March 12, 2003).

Here, the instruction provided by the judge does not rise to the level necessary to create a constitutional issue eligible for review by this Court. As noted above, plain error of state substantive law does not necessarily rise to violation of due process. Here, the New Jersey Appellate court found the jury charge correctly articulated the New Jersey conspiracy law which holds a defendant "responsible for his agreement and criminal intent as well as any natural, probable and foreseeable expansion of the conspiracy." Id. (citing State v. Bridges, 133 N.J. 447 (1993)).

The trial judge included the law of conspiracy in the initial jury charge and further articulated the rule in response to a question posed by the jury by stating:

> [I]f the conspiracy wound up going, continuing over an extended period of time and more items were taken than if there were just one single incident, it would be the fair market value of all of those items that were taken over the extended period of time.
>
> And if that amount exceeds $75,000 or above, that would be one offense. If it's less than $75,000 that would be another offense. So, yes, he would be responsible for all of the items taken pursuant to that conspiracy.

6T at 44:7-17. In response to the question the judge further explained that the jury had to determine petitioner's responsibility based upon the conspiracy and the items stolen pursuant to that conspiracy alone. 6T at 44:18-46:12. The judge noted the jury must distinguish items stolen as a result of other conspiracies or items that were stolen that could not be attributable to an agreement by the petitioner and exclude those from their calculation of responsibility. Id. Considering the above in light of the jury charge as a whole, the instruction on conspiracy was not in error and therefore did not inappropriately infect the outcome of the trial.

-12-

Petitioner further asserts the trial court deprived him due process of law because the judge failed to instruct the jury on prior inconsistent statements.  Petitioner contends with proper instruction, the jury could have considered D'Anna's prior inconsistent statement to the police as substantive exculpatory evidence.  In the alternative, petitioner suggests the prior inconsistent statement could have been used to impeach D'Anna.  Review of the record reveals the trial judge described in detail many factors that the jury could rely upon to determine credibility of the witnesses, including "inconsistencies or contradictions in the testimony."  6T at 9:15-11:13.  As petitioner had opportunity to highlight the inconsistencies to the jury at trial and did not challenge the lack of additional instruction on the matter at trial, this Court finds the instructions regarding credibility sufficient and therefore, the omission of an independent charge on prior inconsistent statements did not violate petitioner's right to due process of law.

Finally, petitioner asserts the trial court deprived him of due process of law when it failed to provide an instruction on the separate crime of attempt.  Although petitioner argues the trial court should have given independent instruction on the law of attempt, here it was not necessary. Petitioner was charged with, and found guilty of theft and conspiracy to commit theft; the charge did not include an allegation of mere attempt to commit theft.  At trial, the judge provided extensive instruction on the law of conspiracy and explained it required the party "agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such a crime."  6T at 21:22-25. After review of the context in which this instruction was provided and the charge as a whole, this Court finds the omission of a separate charge on the law of attempt did not violate petitioner's right to due process of law.

-13-

For the forgoing reasons, petitioner's request for habeas corpus relief is denied.

Dated May 12, 2005.

_____/s_____
Stanley R. Chesler, U.S.D.J.